UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DANIEL DeNORMAND,

                                          **DECISION AND ORDER**
            Petitioner,                   **No. 06-CV-0294T**

     -vs-

HAROLD GRAHAM, SUPERINTENDENT,
AUBURN CORRECTIONAL FACILITY

            Respondent.

_____

## I.   Introduction

*Pro se* petitioner Daniel DeNormand ("Petitioner") has filed a
timely petition for a writ of habeas corpus under 28 U.S.C. § 2254
challenging the constitutionality of his custody pursuant to a
judgment entered July 26, 2001, in New York State, Supreme Court,
Erie County, convicting him, after a jury trial, of one count of
Murder in the Second Degree (N.Y. Penal Law ("Penal Law") §§ 20.00,
125.25[3]) and two counts of Robbery in the First Degree (Penal Law
§§ 20.00, 160.15[1],[2]).

     For the reasons stated below, the petition is denied.

## II.  Factual Background and Procedural History

     On March 2, 2000, Petitioner drove a getaway car for two co-
defendants who robbed a convenience store located on Seneca Street
in Buffalo, New York.  Trial Transcript [T.T.] 84.  During the
course of the robbery, one of the co-defendants fatally shot the
store clerk.  T.T. 88-89.  Petitioner had known his co-defendants

for years, and dated the sister of one his co-defendants. T.T. 294.

On the day of the shooting, Petitioner saw one of his co-defendants with a gun. Petitioner handled the gun at that time, as well as the previous day when he fired it. T.T. 292-293. Petitioner drove his co-defendants and another individual to the immediate vicinity of the convenience store. T.T. 288, 292. The store fronted Seneca Street, and was situated between Roanoke and Armin Streets. T.T. 84-85.

Petitioner parked on Roanoke, facing his car away from the store on Seneca Street. T.T. 184-185. Once Petitioner parked the car, his co-defendants got out. The shooter was wearing a sweatshirt with a hat tied around his face, and the other co-defendant was wearing a mask. T.T. 140, 151-153, 159-160. Both the shooter and the other co-defendant were seen peering inside the store by a witness who was passing by. T.T. 132, 154. Both co-defendants were seen turning around and walking to the side of the store. T.T. 133.

Subsequently, the shooter and the other co-defendant entered the store. The shooter stood with his hands outstretched in front of the store clerk, and demanded that the clerk give him all of the money. T.T. 159, 164, 396. The shooter told the other co-defendant to take the money, which was approximately one hundred dollars. T.T. 293. The store clerk was then fatally shot in the face. T.T. 88-89, 557.

After the robbery and shooting, the co-defendants ran towards Petitioner's car. A witness testified that he heard the co-defendants say to Petitioner, "go, go, go." In response, Petitioner began to pull the car away, and the co-defendants jumped into the moving vehicle as it sped away. T.T. 186-187. Petitioner later admitted to police that he drove the car away from the scene of the crime. T.T. 278-279.

After the robbery and shooting, Petitioner and his co-defendants were seen at another convenience store by an individual who knew them and also saw Petitioner's car parked at the convenience store. T.T. 225-228. One of Petitioner's co-defendants told the individual that they had just robbed a convenience store, and that the individual should watch the news that evening. T.T. 225-229, 294. This individual subsequently gave a statement to police which, based on that information, police searched for Petitioner's car, which was found outside the shooter's home. T.T. 231, 269. The police knocked on the door to the home and were given permission to enter by Petitioner's parents. Police found Petitioner and the shooter inside the home. T.T. 270-273. Petitioner gave police written permission to search his car, and they found a shell casing that had been fired from the murder weapon. T.T. 282. Petitioner also gave police a written statement in which he maintained that he was unaware of any plan to commit a robbery. T.T. 278-288, 292, 295. Petitioner then took police to the home of his other co-defendant, who gave the police

written permission to search his home.  T.T. 325, 339, 368.  When asked by police if the co-defendant had any items of evidentiary significance, the co-defendant indicated he had a mask and a sweatshirt, and also told the police that the gun used in the shooting was behind a recycling bin outside his home.  T.T. 357-363.  Firearms testing confirmed that the gun obtained from the co-defendant was the gun used in killing the convenience store clerk. T.T. 539.

Ultimately, Petitioner and his co-defendants were charged with the robbery and murder of the convenience store clerk.  Petitioner and the co-defendant who did not shoot the clerk were tried jointly before a jury from June 4-12, 2001, and Petitioner was found guilty as charged.

Petitioner was represented by the same attorney at trial and on appeal.

Petitioner was sentenced as a second felony offender to an aggregate term of twenty-three years to life to be served consecutively to a sentence imposed on another indictment.

Petitioner appealed his judgment of conviction, which was unanimously affirmed by the Appellate Division, Fourth Department. People v. DeNormand, 1 A.D.3d 1047 (4th Dep't. 2003).  Petitioner made leave for application to the New York Court of Appeals, which was denied.  People v. DeNormand, 1 N.Y.3d 626 (2004).

Petitioner filed a New York Criminal Procedure Law ("C.P.L.") § 440.10 motion to vacate his judgment of conviction, which was

denied by the Erie County Supreme Court.  <u>See</u> Memorandum and Order of the Erie County Supreme Court dated December 27, 2004 [Mem. & Ord. 12/27/04].  Petitioner appealed the denial of the motion, which was denied.  <u>See</u> Decision of the Appellate Division, Fourth Department dated June 29, 2005.

Petitioner filed a motion for a writ of error coram nobis, which was summarily denied by the Appellate Division, Fourth Department.  <u>People v. DeNormand</u>, 20 A.D.3d 947 (4th Dep't. 2005).  Petitioner appealed the denial, which was denied.  <u>People v. DeNormand</u>, 5 N.Y.3d 852 (2005).

This habeas corpus petition followed.

## III.  General Principles Applicable to Habeas Review

### A.    The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2).  A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court

decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner]

shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

### B.  Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

### C.  The Adequate and Independent State Ground Doctrine

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an

independent and adequate state procedural rule, federal habeas review of the claims is barred.'" Dunham v. Travis, 313 F.3d 724, 729 (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)). "A habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted." Id. (citing Schlup v. Delo, 513 U.S. 298, 321 (1995); Murray v. Carrier, 477 U.S. 478, 496 (1986)).

Although the Supreme Court "has repeatedly cautioned 'that the [independent and adequate state law ground] doctrine applies to bar consideration on federal habeas of federal claims that have been defaulted under state law,'" Dunham, 313 F.3d at 729 (quoting Lambrix v. Singletary, 520 U.S. 518, 523 (1997) (emphasis added by Second Circuit), the Second Circuit has observed that "it is not the case 'that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be[,]'" id. (quoting Lambrix, 520 U.S. at 525 (stating that bypassing procedural questions to reach the merits of a habeas petition is justified in rare situations, "for example, if the [the underlying issue] are easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law")).

**IV.  Petitioner's Claims**

**A.     GROUNDS 1-4 ARE PROCEDURALLY DEFAULTED**

In grounds (1)-(4) of Petitioner's habeas corpus petition, he contends that: (1) the trial court's instructions to the jury were improper;[1] (2) the trial court improperly questioned witnesses and made disparaging remarks about defense counsel in the presence of the jury; (3) he was denied his right against self-incrimination because the statements he made to police were involuntary and obtained in violation of his <u>Miranda</u> rights; and (4) his confrontation rights were violated when a co-defendant's statements were admitted against him at trial.  Petition [Pet.] ¶22A-D; Petitioner's Memorandum of Law [Pet. Mem.], Points I-IV; Traverse [Trav.], 4-12. Petitioner raised each of these claims in his C.P.L. § 440.10 motion, and they were denied on state procedural grounds pursuant to C.P.L. § 440.10(2)(a) and/or (c).[2]  By relying on § 440.10(2)(a) and/or (c), the state court invoked state procedural rules which constitute adequate and independent state grounds for rejecting the claims.  <u>See</u> <u>Reyes v. Keane</u>, 118 F.3d 136, 139 (2d

---

[1]     Even if this issue was not procedurally defaulted, it is a matter of state law, and, as such, is generally not cognizable on habeas corpus review.  <u>See</u> <u>Cupp v. Naughten</u>, 414 U.S. 141, 146 (1973) ("the propriety of a state court's jury instructions is ordinarily a matter of state law that does not raise a federal constitutional issue.").

[2]     Issue one was denied pursuant to § 440.10(2)(a) and (c) because this claim encompasses several sub-claims, one of which had been raised and determined on direct appeal and two of which were not raised on direct appeal, but could have been.  Issue two was denied pursuant to § 440.10(2)(a) because it had been raised and determined on direct appeal.  Issues three and four were denied pursuant to § 440.10(2)(c) because they could have been raised on direct appeal, but were not.  <u>See</u> Mem. & Ord. 12/27/04, 2-3.

Cir. 1997) (holding that a court's reliance on C.P.L. §
440.10(2)(c) constitutes an adequate and independent state ground
that precludes federal habeas review); see e.g., Cruz v. Berbary,
456 F. Supp. 2d 410 (W.D.N.Y. Oct. 16, 2006) (finding Petitioner's
habeas claims procedurally defaulted as trial court dismissed them
on state procedural ground, N.Y. C.P.L. § 440.10(2)(a) & (c)).

A finding of procedural default bars habeas review of the
federal claim unless Petitioner can show cause for the default and
prejudice attributable thereto, or demonstrate that failure to
consider the claim will result in a miscarriage of justice.
Murray, 477 U.S. at 492; Wainwright v. Sykes, 433 U.S. 72, 87-91
(1977). A petitioner establishes cause for a default when he shows
that "some objective factor external to the defense impeded
counsel's efforts to comply with the State's procedural rule."
Murray, 477 U.S. at 488. To satisfy the prejudice prong,
petitioner must show not merely a possibility of prejudice, but
that the alleged error worked to his actual and substantial
disadvantage." Cappiello v. Hoke, 698 F. Supp. 1042, 1052
(E.D.N.Y. 1988) (internal quotation marks and citation omitted).

Here, Petitioner contends that ineffective assistance of
counsel is the cause for the default. A claim of ineffective
assistance of counsel may establish cause for a procedural default.
See, e.g., Edwards v. Carpenter, 529 U.S. 446, 451 (2000);
McCleskey v. Zant, 499 U.S. 467, 494 (1991). However, "[n]ot just
any deficiency in counsel's performance will do . . . . [T]he

-10-

assistance must have been so ineffective as to violate the Federal Constitution . . . . Attorney error short of ineffective assistance of counsel . . . does not constitute cause and will not excuse a procedural default." Murray, 477 U.S. at 488-489. As discussed under Sections "B" and "C" below, Petitioner cannot make out a successful ineffective assistance of counsel claim. Petitioner's ineffective assistance of trial counsel claim is partially procedurally defaulted and, therefore, Petitioner has failed to satisfy the requisite cause and prejudice or a showing of his actual innocence necessary to overcome the procedural default on that portion of his claim. See Edwards, 529 U.S. at 450-451 (finding that a procedurally defaulted ineffective assistance of counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the cause and prejudice standard with respect to the ineffective assistance claim itself); see also Reyes, 118 F.3d at 140 (finding that a petitioner may not bring an ineffective assistance claim as cause for a default when that ineffective assistance claim itself is procedurally barred). Regarding the portion of the claim that is not procedurally defaulted, Petitioner has failed to show that trial counsel provided constitutionally ineffective assistance under Strickland v. Washington.[3] Similarly, Petitioner has also

---

[3]       The AEDPA standard of review applies to this portion of the claim since it was raised in Petitioner's C.P.L. § 440.10 motion, and was rejected on the merits. Accordingly, the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984) must be applied to this portion of Petitioner's ineffective assistance of trial counsel claim.

failed to show that appellate counsel's performance was
constitutionally ineffective under <u>Strickland</u>.[4] In failing to make
out a successful ineffective assistance counsel claim, Petitioner
has failed to show cause for the default on grounds (1)-(4).
Moreover, Petitioner has made no showing that counsel's alleged
errors "worked to his actual and substantial disadvantage."
<u>Cappiello</u>, 698 F. Supp. at 1052. Petitioner also has not alleged
actual innocence.

Therefore, habeas corpus relief must be denied on
claims (1)-(4) of the petition.

## B. CLAIM 5 IS PARTIALLY PROCEDURALLY DEFAULTED AND PARTIALLY WITHOUT MERIT

Petitioner argues he was deprived of his Sixth Amendment right
to effective assistance of trial counsel. Petitioner argues, *inter
alia*, that trial counsel: (1) made an erroneous severance motion;
(2) failed to object to certain testimony; (3) failed to argue that
Petitioner's statements were involuntary; (4) failed to object or
request certain jury instructions; (5) failed to investigate a
witness; and (6) failed to investigate if the hole in Petitioner's
car radio was caused by a bullet.  Pet. ¶22, Ground Five; Pet.
Mem., Point V; Trav., 4-12.  Petitioner raised these issues in his
C.P.L. § 440.10 motion, and issues (1)-(4) were rejected on state

---

[4]     The AEDPA standard of review applies to this claim since it was
properly raised in Petitioner's coram nobis application, and summarily denied
by the Appellate Division, Fourth Department.  Accordingly, the standard set
forth in <u>Strickland</u> must be applied to this claim.

procedural grounds pursuant to C.P.L. § 440.10(2)(c) because they involved matters of record and, as such, could have been raised on direct appeal, but were not.[5] The state court's reliance on C.P.L. § 440.10(2)(c) in this instance constitutes an adequate and independent state ground for denial of issues (1)-(4). See Aparicio, 269 F.3d at 93 (state court's denial of ineffective assistance of counsel claim because defendant failed to raise claim on direct appeal is an independent and adequate state ground barring habeas review); see also Reyes, 118 F.3d at 139; Levine v. Commissioner of Correctional Servs., 44 F.3d 121, 126 (2d Cir. 1995), cert. denied, 520 U.S. 1106 (1997); Arce v. Smith, 889 F.2d 1271, 1272-73 (2d Cir. 1989), cert. denied, 495 U.S. 937 (1990). Consequently, these issues are procedurally defaulted. See Coleman, 501 U.S. at 729.

A finding of procedural default bars habeas review of the federal claim unless Petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the claim will result in a miscarriage of justice. Murray, 477 U.S. at 492; Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977). Again, Petitioner argues ineffective assistance of counsel as the cause for the default. See Trav., 4-12. In this instance,

---

[5]     At the outset, the Court notes that this portion of Petitioner's claim appears to based on a misreading of the trial court's decision, namely that had an ineffective assistance of trial counsel claim been raised on these grounds on direct appeal, it would have been meritorious. The trial court made no such finding. The trial court simply indicated that these issues could have been raised on direct appeal because sufficient facts appeared on the record at the time of Petitioner's direct appeal. See Mem. & Ord. 12/27/04, 2-3.

such a showing is sufficient to establish cause because Petitioner was represented by the same attorney at trial and on appeal. As Petitioner points out, it is unlikely that appellate counsel would have raised an ineffective assistance of trial counsel claim against himself on direct appeal. See Massaro v. United States, 538 U.S. 500, 502-503 (2003) (approvingly referring to lower court's recognition that an attorney who handles both trial and appeal is unlikely to raise an ineffective assistance claim against himself). However, Petitioner makes no showing of prejudice, except for a generalized expression that the cumulative effects of counsel's alleged errors –- both at trial and on appeal -- were prejudicial to the outcome of his trial. See Trav., 9.[6] Such an expression –- both speculative and entirely conclusory in nature -- is not sufficient to show that counsel's alleged errors "worked to his actual and substantial disadvantage." Cappiello, 698 F. Supp. at 1052. Petitioner has also failed to demonstrate that this Court's failure to consider the claim will result in a miscarriage of justice. Thus, Petitioner cannot overcome the procedural default.

Regarding issues (5) and (6), Petitioner raised these issues in his C.P.L. § 440.10 motion and they were denied on the merits. Thus, the deferential AEDPA standard of review must be applied to these issues.

---

[6]     Petitioner states: "All of counsel's errors so seriously undermined confidence in the outcome of the trial. All of counsel's errors showed that counsel was not functioning as counsel."

It is well-settled law that a petitioner claiming ineffective assistance of counsel must show that counsel's representation was fundamentally defective, and that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different.  See Strickland v. Washington, 466 U.S. 668 (1984);  Aparicio, 269 F.3d at 95.  A petitioner seeking to establish constitutionally ineffective assistance of counsel must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955));  see also, e.g., United States v. Jones, 918 F.2d 9, 11 (2d Cir. 1990) (holding that counsel's decisions should not be evaluated in hindsight).  Here, Petitioner contends that counsel was ineffective for failing to investigate one of Petitioner's co-defendants as a possible defense witness. See Pet. Mem., Point V.  Petitioner, however, does not indicate what testimony this co-defendant would have provided, or how such testimony would have exculpated Petitioner.  Thus, Petitioner has failed to overcome the presumption that trial counsel's decision not to investigate one of the co-defendants as a possible witness fell within the range of reasonable professional assistance.  Nor has Petitioner shown that, but for this alleged error, there is a reasonable probability that the outcome of the trial would have been different.  See Strickland, 466 U.S. at 668.

Similarly, Petitioner faults counsel for not consulting with an expert to demonstrate whether a hole in Petitioner's car radio was caused by a bullet. See Pet. Mem., 31. Again, however, Petitioner fails to show the exculpatory value of such information, and/or how such testimony would have assisted his defense. Thus, Petitioner has failed to overcome the presumption that trial counsel's decision not to consult an expert witness on the issue of the hole in Petitioner's car radio fell within the range of reasonable professional assistance. Nor has Petitioner shown that, but for this alleged error, there is a reasonable probability that the outcome of the trial would have been different. See Strickland, 466 U.S. at 668.

Therefore, Petitioner cannot obtain habeas relief on ground five of the petition.

## C. CLAIM 6 IS WITHOUT MERIT

Petitioner contends that he was denied his Sixth Amendment right to effective assistance of appellate counsel. He contends, *inter alia*, that appellate counsel should have raised the following three issues on direct appeal, which were more meritorious than the ones he raised: (1) Petitioner's right against self-incrimination was violated when police obtained Petitioner's statements involuntarily and in violation of his Miranda rights and used them against him at trial; (2) Petitioner's confrontation rights were violated when the prosecution introduced testimony from Petitioner's co-defendants and used it against Petitioner at trial;

and (3) ineffective assistance of trial counsel for failing to raise issues (1) and (2). Pet. ¶22, Ground Six; Pet. Mem., Point VI; Trav., 4-12. Petitioner raised these claims in his coram nobis application, which was summarily denied. DeNormand, 20 A.D.3d at 947. Summary denial of Petitioner's motion constitutes an adjudication on the merits of this claim. Sellen v. Kuhlman, 261 F.3d at 303, 311-12 (2d Cir. 2001).

It is well-settled law that a petitioner claiming ineffective assistance of counsel must show that counsel's representation was fundamentally defective, and that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. See Strickland, 466 U.S. at 668; Aparicio, 269 F.3d at 95. A petitioner seeking to establish constitutionally ineffective assistance of counsel must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel, 350 U.S. at 101); see also, e.g., Jones, 918 F.2d at 11 (holding that counsel's decisions should not be evaluated in hindsight). Counsel is not required to raise all colorable claims on appeal. See Jones v. Barnes, 463 U.S. 745, 751 (1983). Rather, counsel may winnow out weaker arguments and focus on one or two key claims that present "the most promising issues for review." Id. at 751-53. And, of

course, counsel is "strongly presumed to have rendered adequate assistance and [to have] made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 689-90. The Strickland standard of ineffective assistance of counsel applies equally to trial and appellate counsel. See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994), cert. denied, 513 U.S. 820 (1994).

Furthermore, when challenging the effectiveness of appellate counsel, a petitioner must show that counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000) (citing Mayo, 13 F.3d at 533). "Strategic choices," such as deciding which issues to raise on appeal, "made after thorough investigation of the law and facts . . . are virtually unchallengeable." Strickland, 466 U.S. at 690-91. "[T]he decision of appellate counsel to raise a claim on appeal that may reasonably be considered stronger than those asserted by the petitioner in a habeas petition is usually a well-reasoned tactical decision [and] does not constitute ineffective assistance of counsel." Wood v. Artuz, 39 F. Supp. 2d 211, 216 (E.D.N.Y. 1999) (citing Jones, 463 U.S. at 751-52; Cantone v. Superintendent, N.Y. Correctional Facility at Green Haven, 759 F.2d 207, 218-19 (2d Cir.1985)).

Here, Petitioner faults appellate counsel for failing to raise three issues on direct appeal that, he argues in a conclusory

assertion, that were more meritorious than those raised by counsel. See, Pet. Mem., 35. Petitioner, however, has failed to demonstrate how or why these claims were stronger than the five arguments counsel chose to raise on direct appeal. See Mayo,13 F.3d at 533. Furthermore, this Court notes -- before turning to an analysis of the issues -- that although Petitioner faults appellate counsel for raising allegedly weak arguments, he adopts four of the five claims in his habeas corpus petition. In this respect, the Court finds Petitioner's claim to be disingenuous and without merit.

As to the specific issues raised by the Petitioner, the record reveals that issues (1) and (2) had not been preserved for appellate review. See Mem. & Ord. 12/27/09; DeNormand, 1 A.D.3d at 1049. Thus, it would have been futile for appellate counsel to have raised them on direct appeal. Concerning issue (3), Petitioner suggests that counsel was ineffective for failing to preserve these issues at trial, yet subsequently fails to raise the issue as an ineffective assistance of trial counsel claim on appeal. See Trav., 4-12. However, decisions of this nature (i.e., choosing which issues to object to at trial so as to properly preserve them and choosing which issues to pursue on appeal) are of the "strategic" type that are unchallengeable under Strickland. Strickland, 466 U.S. at 690-91. Thus, Petitioner has failed to overcome the presumption that appellate counsel's decision to forgo raising the above three issues while pursuing five other arguments

was unreasonable given the facts and circumstances of the case. Petitioner also has not shown that but for the alleged errors, there is a reasonable probability -- much less any probability at all -- that the outcome of the appeal would have been different. See Mayo, 13 F.3d at 533.

This Court cannot find that the state court's determination of this issue was contrary to or an unreasonable application of settled Supreme court law. Petitioner cannot obtain habeas corpus relief on this ground.

## D. CLAIM 7 IS WITHOUT MERIT

Petitioner argues that the evidence was insufficient to support the convictions of murder and robbery. In particular, he contends that the prosecution failed to prove beyond a reasonable doubt that he acted with the requisite intent. Pet. ¶22, Ground Seven; Pet. Mem., Point VIII; Trav., 11-13. Petitioner raised this claim on direct appeal to the Appellate Division, Fourth Department, and the claim was rejected on the merits.[7]

---

[7] The Appellate Division found that "[a]lthough there is no direct evidence of defendant's intent to commit the robbery, it is well-settled that intent may be inferred from conduct as well as the surrounding circumstances. Viewing the evidence in the light most favorable to the People, we conclude that there is a valid line of reasoning and permissible inferences that could lead a rational person to the conclusion reached by the fact finder, i.e., that defendant knowingly participated in the robbery and shared his accomplices' intent. The jury properly rejected as incredible the defense theory that defendant had no reasonable ground to believe either that one of his accomplices was armed with a deadly weapon or that the accomplice intended to engage in conduct likely to result in serious physical injury or death." DeNormand, 1 A.D.3d at 1048-1049 (internal citations omitted).

The law concerning sufficiency of the evidence to support a criminal conviction is well-settled: the reviewing court's inquiry is limited to asking whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); accord, e.g, People v. Contes, 60 N.Y.2d 620, 621 (1983). This sufficiency of the evidence "inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 506 U.S. 390, 402 (1993).

A review of the proof submitted in this case establishes that there was sufficient circumstantial evidence for the jury to find, beyond a reasonable doubt, that Petitioner intended to commit the crimes with which he was charged and convicted of. Petitioner contends that he was unaware that his co-defendants intended to rob the convenience store when he drove them there, and that he was "surprised" and in "disbelief" when he discovered they had robbed and shot the store clerk. See Pet. Mem., 39. Accordingly, he argues that he could not and did not intentionally aid his co-defendants in the commission of the robbery, as is required under the law when an individual is charged as an accomplice. See Penal Law § 20.00; Pet. Mem., 39-40. The record, however, belies this contention. The record shows that Petitioner admitted to the

police that he was driving the car at the time of the robbery; that Petitioner had known his co-defendants for years; that Petitioner knew one of the co-defendants had a gun in his possession on the day of the robbery; and that Petitioner had handled the gun used to commit the crime on the day of the robbery. T.T. 288-293. Based on a review of this evidence in a light most favorable to the prosecution, a rational trier of fact could have determined that the proof of Petitioner's mental state was sufficient to support the murder and robbery convictions.

Accordingly, this Court cannot find that the Appellate Division's decision on this issue was contrary to or an unreasonable application of settled Supreme Court law. Petitioner cannot obtain habeas corpus relief on this ground.

## V.   Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and

therefore denies leave to appeal as a poor person. <u>Coppedge v.</u> <u>United States</u>, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED**.

S/Michael A. Telesca

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    November 23, 2009
          Rochester, New York